UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL HARGIS, ) | CASE NO. 1:16CV1071 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | GEORGE J. LIMBERT |
| ) | |
| NANCY A. BERRYHILL[1], ) | |
| ACTING COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| Defendant. ) | |
| ) | |

Plaintiff Michael Hargis ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his application for disability insurance benefits ("DIB"). ECF Dkt. #1. In his brief on the merits, filed on September 9, 2016, Plaintiff asks the Court to review whether the administrative law judge's ("ALJ") decision is supported by substantial evidence. ECF Dkt. #16. On November 9, 2016, Defendant filed a response brief. ECF Dkt. #18. Plaintiff did not file a reply brief.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

**I.     PROCEDURAL HISTORY**

Plaintiff filed an application for DIB in July 2012. ECF Dkt. #12 ("Tr.") at 148.[2]  In the application, Plaintiff alleged disability beginning on July 7, 2011. *Id.* at 150. This claim was denied initially and upon reconsideration. *Id.* at 12. Plaintiff then requested a hearing before an ALJ, which was held on August 7, 2014. *Id.* at 27. On December 19, 2014, the ALJ denied Plaintiff's

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

application for DIB. *Id.* at 12. Subsequently, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. *Id.* at 1. Accordingly, the decision issued by the ALJ on December 19, 2014, stands as the final decision.

On May 4, 2016, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on September 9, 2016. ECF Dkt. #16. Defendant filed a response brief on November 9, 2016. ECF Dkt. #18. Plaintiff did not file a reply brief.

**II.     SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

In the decision issued on December 19, 2014, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. Tr. at 14. Continuing, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 7, 2011, the alleged onset date. *Id.* The ALJ found that Plaintiff had the following severe impairments: asthma; obstructive sleep apnea; obesity; hypertension; history of pulmonary embolism; right arm basilica vein thrombophlebitis and deep vein thrombosis; depressive disorder; and panic disorder. *Id.* Following an analysis of Plaintiff's severe impairments, that ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 15. In making this determination, the ALJ analyzed Plaintiff's activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation. *Id.* at 16.

In activities of daily living, the ALJ found that Plaintiff had mild restriction. Specifically, the ALJ noted that Plaintiff: lived with his wife and adult daughter; participated in household chores including washing laundry, cleaning, and taking out the trash; reported some difficulties with self-care that were secondary to his physical limitations; maintained a driver's license and was able to drive a car; reported that he left his home minimally, but that this was primarily due to his breathing problems; was independent in his ability to manage his medical care and finances; and did not allege any mental difficulties in adhering to a schedule or routine during his last period of employment. Tr. at 16.

The ALJ determined that Plaintiff had moderate difficulties in social functioning. Tr. at 16. Namely, the ALJ indicated that Plaintiff: reported some difficulties being around crowds due to

panic attacks; denied a history of difficulty getting along with others in school or past work environments; spent time visiting his family members if their schedules allowed; and went to his mother-in-law's home to visit. *Id.* Further, the ALJ stated that the consultative examining psychologist, Mitchell Wax, Ph.D., noted some difficulty regarding Plaintiff's ability to communicate direct responses during questioning, which required some redirection, but that he was otherwise polite and cooperative. *Id.* The ALJ also noted that there was no evidence that Plaintiff experienced any difficulty interacting with treating sources or field office representatives, and that there was likewise no evidence that he had difficulty during the hearing. *Id.* Additionally, the ALJ indicated that, despite his complaints of irritability during treatment in early 2014, Plaintiff referred to himself during the hearing as a generally "quiet person" and admitted that he typically did not have problems with others. *Id.*

With regard to concentration, persistence, or pace, the ALJ found that Plaintiff had moderate difficulties. Tr. at 16. The ALJ indicated that Plaintiff presented as alert and oriented at the consultative examination and that Dr. Wax noted that Plaintiff did not have difficulty maintaining attention and concentration during the examination, but noted that his self-reported lack of persistence in household chores was due to his physical limitations. *Id.* Further, the ALJ stated that Plaintiff told Dr. Wax that he was fired from his most recent job because of missing work due to physical problems and anxiety, but elsewhere Plaintiff's reports had not indicated that anxiety was a problem while he was working and his treatment records from around the time he stopped working did not corroborate his statement. *Id.* Additionally, the ALJ stated that Plaintiff's treating sources noted that he was cooperative and attentive, with no gross behavioral abnormalities, and that he admitted at the hearing that he was able to concentrate enough to follow a one-hour television show and that he had to rise and move during this one-hour period due solely to his physical impairments. *Id.* As for episodes of decompensation, the ALJ stated that Plaintiff had not experienced any episodes of decompensation of extended duration. *Id.*

After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations: the requirement of a sit/stand option every hour for five minutes without leaving the workstation;

-3-

occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; cannot climb ladders, ropes, or scaffolds; can reach in all directions and can handle, finger, and feel; preclusion from workplace exposure to extreme temperatures, humidity, and concentrated levels of pulmonary irritants; must avoid workplace hazards such as unprotected heights or moving machinery; could perform simple routine tasks with simple, short instructions; could make simple work-related decisions; could only tolerate few workplace changes; and limited to superficial interaction with co-workers, supervisors, and the public. Tr. at 17.

When discussing the RFC determination, the ALJ stated that, after careful consideration of the evidence, she found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. Tr. at 18. First, the ALJ indicated that the objective clinical evidence was inconsistent with Plaintiff's allegations of disabling mobility limitations due to shortness of breath. *Id.* The ALJ noted that pulmonary function testing demonstrated only a mildly restrictive ventilator deficit, and that a sleep study showed obstructive sleep apnea with "remarkable" improvement in Plaintiff's respiratory events and arterial oxygen desaturation with continuous positive airway pressure ("CPAP") therapy. *Id.* Continuing, the ALJ indicated that although Plaintiff had a history of pulmonary embolism and deep vein thrombosis around the time of the alleged onset date, with recurrence in November 2011, testing for a recurrence of these conditions in May 2012 was negative. *Id.* The ALJ also stated that Plaintiff's physical examinations were also relatively unremarkable, specifically mentioning the March 22, 2012, physical examination revealing that Plaintiff's lungs were clear, respirations were even and non-labored, and that percussion of the chest was normal. *Id.* After stating the above, the ALJ determined that the examination findings and diagnostic results appeared inconsistent with Plaintiff's reports regarding his ability to walk only fifty yards at a time. *Id.*

Next, the ALJ stated that the evidence also failed to support Plaintiff's allegations of lower extremity edema that limited his ability to sit, stand, or walk for prolonged periods. Tr. at 18. According to the ALJ, the available evidence regarding Plaintiff's physical impairments spanned only from the onset date until May 2012. *Id.* at 18-19. The ALJ stated that there were occasions

in the record where treating sources noted no edema, including a notation from Plaintiff's treating pulmonologist from March 22, 2012. *Id.* at 19. Continuing, the ALJ indicated that Plaintiff's most recent physical examination, performed in the context of an emergency visit for acute chest pain on May 17, 2012, demonstrated 2+ non-pitting edema in the lower extremities. *Id.* The ALJ also stated that despite Plaintiff's allegation that he must prop up his legs while he sits, there was only one instance in which a treating source recommended that Plaintiff elevate his legs, and that there was no indication that this was a permanent functional limitation. *Id.* Further, the ALJ indicated that there was no evidence that a treating source recommended activity restrictions secondary to Plaintiff's impairments. *Id.*

The ALJ next stated that Plaintiff's treatment history was also inconsistent with what would be expected in the case of an individual with the symptoms and limitations alleged. Tr. at 19. According to the ALJ, the evidence corroborated Plaintiff's allegations of a somewhat sudden onset of his severe impairments at the time of the alleged onset date in July 2011, with some recurring complications over the following months requiring emergency visits and/or brief hospitalizations. *Id.* The ALJ indicated that, despite Plaintiff's continued reports of debilitating shortness of breath throughout the relevant period, the available evidence demonstrated that he last sought treatment of any kind for his condition in May 2012, and that the significant gap in treatment from that time until the date of the decision suggests that his impairments were not as bothersome or limiting as alleged. *Id.* The ALJ also stated that the evidence demonstrated that Plaintiff responded to appropriate treatment methods, including CPAP therapy, an inhaler, and prescription medications for asthma and anticoagulation. *Id.* Also noted by the ALJ was the fact that there was no evidence that a physician had prescribed an ambulatory aid despite Plaintiff's allegation of debilitating shortness of breath that limited his ability to walk even fifty yards. *Id.*

As for Plaintiff's mental health, the ALJ stated that the objective evidence and treatment history failed to corroborate Plaintiff's allegations of disabling depression and anxiety. Tr. at 19. The ALJ indicated that Plaintiff actually denied experiencing depression and anxiety to treating sources on several occasions. *Id.* Further, the ALJ stated that Plaintiff only sought mental health treatment in February 2014, which suggested that his symptoms had not been as bothersome or

limiting as alleged. *Id.* Additionally, the ALJ noted that: Plaintiff did not require stabilization for disruptive mental health symptoms; there was no evidence of suicidal ideation, paranoia, hallucinations, or abnormal though processes or behavior; and that Plaintiff had not required inpatient hospitalization for mental health reasons at any time prior to or during the relevant period. *Id.* at 20.

Next, the ALJ indicated that Plaintiff testified that he last worked in November 2011 and left due to his illness. Tr. at 20. The ALJ stated that while the certified earnings record did not reflect wages past 2011, Plaintiff had indicated that he was employed "part-time" as recently as his visit with a physician on March 22, 2012. *Id.* As noted by the ALJ, Plaintiff also described his employment status as "part-time" during two prior visits with his pulmonologist, as well as during an emergency room visit on January 12, 2012. *Id.* The ALJ stated that while this may have been a miscommunication rather than an intentional effort to mislead, this evidence suggested that Plaintiff may not have been a fully accurate historian with respect to his work history. *Id.* Continuing, the ALJ indicated that Plaintiff's activities of daily living were inconsistent with his allegations regarding his functional limitations, specifically noting that he was able to participate in light household chores, and that he maintained a driver's license and was able to leave his home independently. *Id.*

As for opinion evidence, the ALJ stated that no treating physician, psychiatrist, or psychologist offered an opinion regarding Plaintiff's work-related limitations. Tr. at 20. As such, the ALJ indicated that she had given considerable weight to the opinion of the state agency medical consultant, Leon D. Hughes, M.D., who opined that Plaintiff was capable of a range of light exertional work activity with postural and environmental limitations accounting for his asthma and obesity. *Id.* Regarding Plaintiff's mental health limitations, the ALJ considered the examining opinion offered by Dr. Wax. *Id.* at 21. The ALJ indicated that Dr. Wax assigned a global assessment of functioning ("GAF") score of fifty-one and opined that Plaintiff was able to understand instructions and maintain attention, but would not respond appropriately to superiors, co-workers, or work pressures. *Id.* After reciting the substance of Dr. Wax's opinion, the ALJ stated that the opinion was entitled to only some weight as it was based heavily on Plaintiff's

subjective allegations during the one-time examination. *Id.* Further, the ALJ indicated that the medical evidence of record failed to demonstrate that Plaintiff was unable to get along with others or respond to stress appropriately, specifically noting that treating sources consistently noted that he was alert, oriented, and cooperative, with no cognitive or communicative deficits. *Id.* Additionally, the ALJ stated that the Dr. Wax's assignment of a GAF score of fifty-one was internally inconsistent with his opinion that Plaintiff would be unable to interact with others or deal with stress, and that Dr. Wax's opinion was inconsistent with evidence demonstrating that Plaintiff left his most recent employment for reasons stemming primarily from his physical health. *Id.* Continuing, the ALJ explained that she gave more weight to the opinion of the state agency psychological consultant, Paul Tangeman, Ph.D., who opined that Plaintiff was capable of carrying out simple, sustained tasks without strict time pressures and involving only superficial interaction with others. *Id.* The ALJ stated that Dr. Tangeman's opinion was consistent with the limited evidence at the time of the determination, which consisted primarily of Dr. Wax's consultative examination findings. *Id.*

After the discussion of Plaintiff's RFC, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. at 21. The ALJ indicated that Plaintiff was a younger individual on the alleged onset date, had a high school education and was able to communicate in English, and that the transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that he was not disabled. *Id.* at 22. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs that Plaintiff could perform existed in significant numbers in the national economy. *Id.* In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from July 7, 2011, the alleged onset date, through the date of the decision. *Id.* at 23.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

    2.    An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

    3.    If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

    4.    If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

    5.    If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**IV.**    **STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the

record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## **V.      ANALYSIS**

Plaintiff asserts that the ALJ's decision was not supported by substantial evidence because the RFC finding was not an accurate assessment of his specific mental and physical limitations. ECF Dkt. #16 at 11-14. First, Plaintiff avers that Dr. Wax: diagnosed him with panic disorder with agorophobia and depressive disorder; opined that he would not respond appropriately to supervisors or co-workers in a work setting; noted that he distorted questions and did not answer questions directly; opined that he would not respond appropriately to work pressures in a work setting due to panic disorder; and stated that he became anxious and was not able to attend work on a regular basis. ECF Dkt. #16 at 12. Continuing, Plaintiff indicates that he presented to Said Abou Haidar, M.D., for a complete psychiatric evaluation sixteen months after Dr. Wax performed his evaluation. *Id.* Plaintiff indicates that he reported that he was experiencing depression with increased irritability, decreased sociability, difficulty with sleep, weight gain, difficulty with concentration, and panic attacks with acute periods of intense fear or discomfort. *Id.* At this evaluation, Dr. Haidar diagnosed Plaintiff with major depressive disorder (single episode, severe) and panic disorder, and assigned a GAF score of forty-five. *Id.* Plaintiff states that Dr. Haidar noted that his symptoms had not abated and assigned a GAF score of forty-five at a follow-up visit. *Id.*

Next, Plaintiff asserts that the ALJ unreasonably found that Dr. Wax's opinion was only entitled to some weight, and that the ALJ improperly stated that the opinion was based heavily on Plaintiff's subjective allegations during a one-time evaluation. Tr. at 12. Plaintiff claims that it is apparent that the ALJ did not consider the factors set forth in 20 C.F.R. § 404.1527(c). *Id.* at 12. Continuing, Plaintiff asserts that Dr. Wax did not rely simply on Plaintiff's subjective allegations, and that Dr. Wax's report is fully consistent with the report of Dr. Haidar. According to Plaintiff,

-9-

Dr. Wax's report and Dr. Haidar's report, taken together, provide longitudinal evidence that he suffered from serious symptoms resulting from his mental impairment. *Id.* at 12-13. Plaintiff also asserts that the ALJ's statement that Dr. Wax's opinion was inconsistent with evidence that he left his most recent employment for reasons primarily associated with his physical health is not a valid reason to reject the opinion. *Id.* at 13. Specifically, Plaintiff avers that he testified that his depression began due to problems with his blood clots, and that, in fact, Plaintiff reported to Dr. Wax that he had no difficulty getting along with others when working. *Id.* According to Plaintiff, this evidence demonstrates that Plaintiff's symptoms arose after he stopped working and continued to worsen. *Id.*

Moving on, Plaintiff asserts that the ALJ did not even afford full weight to the opinion of the non-examining state agency psychological consultant, Dr. Tangeman. Tr. at 13. Plaintiff states that the ALJ omitted significant limitations found by Dr. Tangeman when assessing Plaintiff's RFC. *Id.* Specifically, Plaintiff indicates that the ALJ omitted Dr. Tangeman's opinion that he may require extra supervisory redirection and did not include the assessment that his contact with others should be brief. *Id.* Plaintiff asserts that the ALJ's decision was not supported by substantial evidence due to these omissions. *Id.*

Regarding his physical limitations, Plaintiff avers that the ALJ wrongly determined that the record did not support his allegations of lower extremity edema that would limit his ability to stand, sit, or walk for prolonged periods. ECF Dkt. #16 at 14. Plaintiff claims that the ALJ's RFC assessment did not accommodate his need for a sit/stand option every hour for a period of five minutes or his need to elevate his legs throughout the workday. *Id.* Further, Plaintiff claims that the ALJ's RFC findings did not take into account his inability to respond appropriately to the public, co-workers, and supervisors. *Id.* For these reasons, Plaintiff asserts that there is not substantial evidence in the record supporting the ALJ's finding that he was capable of performing a significant number of jobs, and thus he should be found to be disabled. *Id.*

Defendant contends that substantial evidence supports the ALJ's RFC determination. ECF Dkt. #18 at 5-11. First, Defendant addresses Plaintiff's physical limitations, indicating that the record only contained two opinions regarding Plaintiff's physical ability to perform work. *Id.* at 8.

-10-

Defendant indicates that the ALJ considered the opinions provided by the state agency physicians, who each opined that Plaintiff was capable of performing work at the light exertional level, with certain additional limitations, as well as updated evidence offered after the opinions were issued. *Id.* at 8-9. According to Defendant, the ALJ took into account the only two opinions offered regarding Plaintiff's physical limitations, and then further limited the RFC finding based on updated evidence, such as Plaintiff's testimony. *Id.* at 9.

Moving on to Plaintiff's mental limitations, Defendant asserts that the ALJ considered the treatment notes as well as the opinions of Mel Zwissler, Ph.D., and Dr. Tangeman, and accounted for these opinions in the RFC finding. ECF Dkt. #18 at 9. Specifically, Defendant notes that Dr. Zwissler and Dr. Tangeman opined that Plaintiff: could carry out sustained tasks to completion without strict times pressures; could interact in brief, simple, superficial ways; and did not feel comfortable going out in public. *Id.* Additionally, Defendant states that Plaintiff's mental health examinations routinely showed Plaintiff to be alert, oriented, and cooperative, and with intact memory, concentration, judgment, and insight. *Id.* Defendant asserts that there was no evidence that Plaintiff experienced suicidal ideation, paranoia, hallucinations, or abnormal thought processes or behavior, or that he had been hospitalized for mental health reasons. *Id.* at 9-10. According to Defendant, these opinions were consistent with Plaintiff's ability to perform mental work-related functions at his prior jobs. *Id.* at 10. Defendant also notes that although Plaintiff told Dr. Wax that he was fired due to physical problems and anxiety, treatment notes show that Plaintiff did not experience anxiety until after his termination. *Id.*

Next, Defendant contends that the ALJ reasonably assigned Dr. Wax's opinion little weight because the opinion was internally inconsistent, inconsistent with the evidence as a whole, and based on Plaintiff's subjective complaints during a single examination. ECF Dkt. #18 at 10. Defendant indicates that it is significant that no other physician opined that Plaintiff would be unable to respond to work pressures, and, to the contrary, the record is replete with opinions that Plaintiff had only mild difficulties in maintaining concentration, persistence, or pace. *Id.* For example, Defendant states that although Dr. Tangeman noted moderate limitations in Plaintiff's ability to maintain concentration, persistence, or pace, he concluded that Plaintiff was still capable of carrying out

-11-

sustained tasks to completion without strict time pressures. *Id.* Based on the reasons stated above, Defendant asserts that the ALJ's RFC finding was reasonable, and that her decision should be affirmed. *Id.* at 11.

Plaintiff's arguments are without merit. The ALJ's assignment of some weight to Dr. Wax's opinion was not improper because it was based on substantial evidence. First, the ALJ indicated that Dr. Wax' opinion was based heavily on Plaintiff's subjective complaints made during a single evaluation. Tr. at 21. A reading of Dr. Wax's opinion confirms the ALJ's statement, as the sections of Dr. Wax's opinion titled "Summary and Conclusions" and "Functional Assessment" mainly paraphrase Plaintiff's statements or directly quote Plaintiff. *See id*. at 387-88. Moving on, the ALJ correctly stated that Plaintiff's treating sources consistently noted that he was alert, oriented, cooperative, and without cognitive of communicative deficits. *See id.* at 17-21, 229, 242, 386-88, 390, 392. The ALJ also correctly indicated that there was no evidence of panic attacks or related symptom exacerbation due to stress that required physician intervention. *Id.* at 21. Further, the ALJ determined that Dr. Wax's opinion was internally inconsistent as he assigned a GAF score of fifty-one, indicating moderate symptoms or some difficulty in social/occupational functioning, but then opined that Plaintiff would be unable to interact with others or deal with stress. *Id.*

Plaintiff asserts that "it is apparent that the ALJ did not consider the factors set forth in 20 C.F.R. § 404.1527(c)." ECF Dkt. #16 AT 12-13. Despite Plaintiff's assertion, the ALJ did consider the factors set forth in 20 C.F.R. § 404.1527(c).[3] The ALJ addressed the examining and treating relationship between Plaintiff and Dr. Wax when discussing the severity of Plaintiff's impairments and his RFC. Tr. at 16, 21. As for supportability and consistency, the ALJ addressed these issues when explaining the reasons why only some weight was afforded to the opinion of Dr. Wax. *Id.* at 21. Plaintiff does not indicate that Dr. Wax has any specialization that the ALJ failed to address. Finally, insofar as Plaintiff claims that Dr. Haidar's opinion was consistent with Dr. Wax's opinion and thus tends to support the latter, the ALJ noted multiple sources constituting substantial evidence

---

[3] 20 C.F.R. § 404.1527(c) indicates that the following factors will be considered when weighing a medical opinion: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors which tend to support or contradict the opinion.

contradicting Dr. Wax's opinion. *See id.* at 16-21. The fact that Dr. Wax's opinion was supported by Dr. Haidar's opinion, but contradicted by the other opinions of record, does not establish that the ALJ was required to provide greater weight to Dr. Wax's opinion.

Further, Plaintiff does not assert that Dr. Wax was a treating source, instead referring to him properly as a "[c]onsultative examiner." ECF Dkt. #16 at 12. This classification was correct since Dr. Wax examined Plaintiff a single time prior to preparing his opinion. Accordingly, no special analysis is required beyond a determination as to whether the ALJ's findings were supported by substantial evidence. *See* 42 U.S.C. § 405(g). The ALJ provided substantial evidence explaining why she afforded only some weight to Dr. Wax's opinion, and was under no obligation to do more. Plaintiff also claims that the ALJ improperly found that Dr. Wax's opinion regarding Plaintiff's limitations was inconsistent with evidence demonstrating that he left his last employment for reasons associated primarily with his physical health. ECF Dkt. #16 at 13. While there is evidence in the record both supporting and contradicting this minor portion of the ALJ's opinion, Plaintiff's argument is moot as, for the reasons described above, the ALJ's decision was supported by substantial evidence.

Plaintiff also asserts that the ALJ omitted portions of Dr. Tangeman's opinion, namely, that he may need extra supervisory redirection and should have only brief contact with co-workers supervisors, and the public. ECF Dkt. #16 at 13. Dr. Tangeman was a state agency psychological consultant, rather than a treating physician, and thus the ALJ was subject to the same substantial evidence standard when assessing Dr. Tangeman's opinion, as described above. The ALJ relied on substantial evidence when assigning "more weight" to Dr. Tangeman's opinion, as she provided the following reasons for the weight assigned: the opinion was consistent with the evidence available to Dr. Tangeman; Plaintiff received limited treatment for mental health concerns; there was no history of mental health treatment at the time of the alleged onset date; and the opinion was consistent with Plaintiff's history regarding his ability to perform his most recent employment. Tr. at 21. The ALJ was under no obligation to accept Dr. Tangeman's opinion that Plaintiff may need extra supervisory redirection and should have only brief contact with co-workers, supervisors, and the public. *See* 42 U.S.C. § 405(g). In fact, the ALJ did include the limitation that Plaintiff be

-13-

limited to superficial interaction with co-workers, supervisors, and the public, so it appears that Plaintiff, at least as to this point, is concerned only with the ALJ's omission of the word "brief." The ALJ was not required to explicitly address every piece of evidence in the record. *Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004). The ALJ's omission of these two relatively minor portions of Dr. Tangeman's opinion does not render the ALJ's decision unsupported by substantial evidence, as suggested by Plaintiff. Rather, the ALJ considered Dr. Tangeman's opinion, explained the level of weight assigned to the opinion, and adopted the portions of the ALJ's opinion that she found were supported by the record. The ALJ's actions do not constitute error.

Plaintiff also briefly asserts that the ALJ wrongly determined that the record did not support his allegations of lower extremity edema that would limit his ability to stand, sit, or walk for prolonged periods. ECF Dkt. #16 at 14; *see* Tr. at 18-19. Continuing, Plaintiff claims that although the ALJ indicated that Plaintiff required a sit/stand option for five minutes every hour, she improperly included that Plaintiff would not be required to leave the workstation. *Id.* Plaintiff does not rely on the only opinions offered as to his physical limitations, submitted by Elizabeth Das, M.D., and Dr. Hughes, the state agency reviewing physicians, and does not speak as to how the ALJ improperly assessed these opinions. *See* ECF Dkt. #16 at 14. Instead, Plaintiff cites to instances in the record where his edema is discussed and the Mayo Clinic's website, where it is stated that elevation and movement are "life style and home remedies" that may decrease edema. *Id.*

Plaintiff fails to cite any medical opinion indicating that Plaintiff must be allowed to leave his workstation or elevate his leg throughout the day, instead apparently suggesting that the ALJ should have done independent research on medical techniques that "may help decrease edema and keep it from coming back."[4] No precedent is cited for such a proposition. The ALJ discussed Plaintiff's edema, as presented in the record, stated that his activities of daily living

---

[4] *See* ECF Dkt. #16 at 14 (citing Mayo Clinic, Edema - Lifestyle and home remedies, http://www.mayoclinic.org/diseases-conditions/edema/basics/lifestyle-home-remedies/con-20033037 (last visited July 19, 2017)); The undersigned is aware that it was advised that Plaintiff "take adequate rest with elevation of the left leg." Tr. at 352. Plaintiff does not cite this portion of the record, and, as stated above, there was no indication in the record that this a was a permanent functional limitation.

were inconsistent with his allegations regarding his functional limitations, and explained that the opinion of Dr. Hughes, which indicated that Plaintiff was capable of a range of light work with certain limitations, was supported by substantial evidence. Tr. at 18, 19-20. Plaintiff has failed to show that it was error for the ALJ to exclude the above discussed limitations in her RFC finding. For the reasons stated above, Plaintiff has failed to show that the ALJ's decision is not supported by substantial evidence.

**VI.   CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

Date: July 21, 2017                         */s/George J. Limbert*
                                            GEORGE J. LIMBERT
                                            UNITED STATES MAGISTRATE JUDGE